# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00205-COA

CHAD SANDERS A/K/A CHAD RAEL SANDERS        APPELLANT
A/K/A CHAD R. SANDERS

v.

STATE OF MISSISSIPPI        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/09/2016 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: BENJAMIN A. SUBER |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KAYLYN HAVRILLA MCCLINTON |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 07/24/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND GREENLEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1. Chad Sanders was convicted of first-degree murder and possession of a firearm by a convicted felon. Sanders was sentenced to life for the first-degree murder charge and five years for possession of a firearm by a convicted felon, with the sentences to run consecutively. He was ordered to pay a $7,000 fine, restitution in the amount of $6,500 to the Crime Victim's Compensation Fund, and all court costs.

¶2. Sanders subsequently filed a motion for a judgment notwithstanding the verdict (JNOV) and a motion for a new trial, which the circuit court denied. Sanders now appeals

and argues an insufficiency of the evidence and ineffective assistance of counsel. Upon review, we find no error and affirm.

## I. Sufficiency of the Evidence

¶3. Sanders first argues the evidence is insufficient to support his convictions. "A motion for [a JNOV] implicates the sufficiency of the evidence." *Lenoir v. State*, 224 So. 3d 85, 90 (¶18) (Miss. 2017). When reviewing a case for sufficiency of the evidence, "[t]his Court considers each element of the offense and reviews all of the evidence in the light most favorable to the verdict." *Id*. "[We] must accept as true all credible evidence consistent with guilt" and "give the State the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Id*. at 90-91 (¶18) (internal quotation mark omitted). "[We] may reverse only when, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Id*. at 91 (¶18) (internal quotation mark omitted). "Thus, if any rational trier of fact could have found each and every one of the elements of the crime beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution, the verdict must stand." *Id*.

### a. First-degree Murder

¶4. Sanders was convicted of the first-degree murder of Timothy Butler. First-degree murder is defined as "[t]he killing of a human being without the authority of law by any means or in any manner . . . [w]hen done with deliberate design to effect the death of the person killed, or of any human being." Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2017).

¶5.    Sanders claims "the State failed to prove that [his] actions . . . cause[d] [Butler's] death." However, the trial testimony shows that two people, Andrew Barnes and Kevin Brown, witnessed Sanders shoot and kill Butler. Barnes testified that he heard multiple gunshots and saw Sanders shoot Butler. According to Barnes, prior to the shooting, Butler was outside of Sanders's house, leaning against a car, facing Sanders and talking to him. Barnes explained that Butler put his hands up defensively to shield himself from the bullets, but "was steady going down." Additionally, Brown testified that he heard multiple gunshots and saw Butler "scrambling for his life . . . trying to get away from [Sanders]." However, according to Brown, "[Sanders] was pursuing [Butler], [trying] to kill him." Brown testified that even as Sanders jogged away, Sanders continued to look at Butler as if "to make sure [Butler] wasn't moving."

¶6.    Dr. John Davis, a forensic pathologist and deputy chief medical examiner, confirmed that Butler's death was caused by multiple gunshot wounds. Dr. Davis opined that Butler's death was a homicide. Specifically, Dr. Davis testified that Butler received two gunshot wounds to his head, one to the left side and one to the back of his head. Additionally, there was a gunshot wound to Butler's left chest that proceeded upward into his neck and severed his spinal cord, and a "more superficial gunshot wound involving his left index and thick finger and thumb."

¶7.    Dr. Davis's testimony that one of the bullets entered through the back of Butler's head supports the testimony of Barnes and Brown that Butler was trying to get away from Sanders. Also, Dr. Davis's testimony regarding Butler's superficial gunshot wound to his fingers is

3

consistent with the testimony that Butler acted defensively in response to the gunshots. Thus, the testimonies of Barnes, Brown, and Dr. Davis support a finding that Sanders did unlawfully kill and murder Butler in the first degree.

¶8.    Sanders asserts Brown's testimony conflicts with the testimony of Olga Bell. Specifically, Sanders asserts, "[t]he fact that the State's witness . . . Bell testified that there was no one at the body of the victim when she arrived does not corroborate . . . Brown's testimony that he went to the body after hearing the gunshots." Sanders argues "[t]his conflicting testimony . . . weakens the sufficiency of the State's argument as to what actually happened during the incident, resulting in . . . a reasonable doubt that [Sanders] did in fact fatally wound [Butler]." We disagree.

¶9.    Bell testified that on the night of the shooting, she and her brother were at her parents' house when she heard three to four gunshots. Bell and her brother went outside and saw Sanders standing in the yard. They subsequently proceeded to check on Butler, who was lying in the street near Sanders's house. Bell, who is in the medical field, checked Butler's pulse and realized he was dead. Bell explained that, at that time, she and her brother were the only ones at the scene with Butler's body. However, Bell saw Brown walking up towards them, crying. Bell stated Brown was walking from an area where Barnes's mother lives.

¶10.    Brown testified that after the shooting, he went to help Butler, but got scared and ran to Barnes's mother's house. However, shortly thereafter, Brown returned to the scene. Brown recalled seeing Bell and her brother, but could not "recall whether it was when [he] returned or before [he] left that [he] saw them." Thus, despite Sanders's assertion, Bell's and

4

Brown's testimonies do not appear to conflict. Regardless, any "[c]onflicts in the evidence are for the jury to resolve." *Williams v. State*, 64 So. 3d 1029, 1033 (¶13) (Miss. Ct. App. 2011).

¶11. Sanders further asserts Brown's testimony is inconsistent with the testimony of Dr. Davis. Specifically, Sanders claims Brown's testimony that Sanders was "close" to Butler at the time of the shooting conflicts with Dr. Davis's testimony that Butler's injuries "were indeterminate range or distant range gunshot wounds." However, it is undisputed that Butler died from multiple gunshot wounds. Brown testified that after the shooting began, Butler tried to get away from Sanders. Indeed, one of Butler's gunshot wounds was to the back of his head. Thus, the record shows that Sanders's proximity to Butler at the time each shot was fired varied. Nevertheless, the alleged conflicting testimony was considered and resolved by the jury. Thus, Sanders's claim fails.

¶12. Considering the evidence in the light most favorable to the State, we find sufficient evidence exists to support Sanders's conviction of first-degree murder. Thus, the circuit court properly denied Sanders's motion for a JNOV on this issue.

> b. *Possession of a Firearm by a Convicted Felon*

¶13. "In order to prove the crime of possession of a firearm by a convicted felon, the State must simply prove two things: (1) the defendant was in possession of a firearm, and (2) the defendant had been convicted of a felony crime." *Cooley v. State*, 14 So. 3d 63, 66 (¶13) (Miss. Ct. App. 2008). Here, the record shows Sanders had been convicted of a felony crime, specifically, the distribution of a controlled substance. The record further shows both Barnes

5

and Brown saw Sanders shoot Butler. Moreover, Johnnie Young testified that shortly after the shooting, he saw Sanders carrying a black revolver.

¶14. According to Young, Sanders approached him and asked for his cell phone. Young stated he gave Sanders his cell phone because Sanders was holding a gun. Sanders claims Young's testimony is insufficient to establish the element of possession since Young had consumed alcohol prior to observing Sanders with a revolver.

¶15. Young testified that he, along with his cousin, Bell's brother, and Sanders rode around earlier that morning and drank beer, but split up "before 12:00 [noon]." Although Young admitted to drinking one, twenty-four ounce Budweiser earlier in the day, the shooting occurred that night around 9:00 p.m. Thus, it is unlikely that alcohol consumed prior to noon would have affected Young's memory and judgment that night. Nevertheless, "[i]t is the role of the jury to evaluate the veracity of [the] witnesses." *Montana v. State*, 822 So. 2d 954, 965 (¶51) (Miss. 2002). The jury heard testimony from three men who saw Sanders with a gun. It was the jury's province to determine the credibility of those witnesses and to resolve any conflicts in the evidence. *Id*.

¶16. We find sufficient evidence exists to support Sanders's conviction of possession of a firearm by a convicted felon. As such, we do not find the circuit court erred in denying the motion for a JNOV.

II. *Ineffective Assistance of Counsel*

¶17. Sanders further argues he received ineffective assistance of counsel. Sanders asserts his trial counsel failed to comply with Uniform Circuit Court Rule 9.04, which caused his

expert witness's testimony to be excluded. According to Sanders, his expert witness was going to testify that he did not kill Butler and did not stand over Butler and shoot him. Sanders claims that had his expert witness been permitted to testify, such testimony would have established reasonable doubt such that a jury would not have convicted him.

¶18.    To prove ineffective assistance of counsel, Sanders must show: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "We look at the totality of the circumstances to determine whether counsel's [performance was] both deficient and prejudicial." *Dartez v. State*, 177 So. 3d 420, 423 (¶19) (Miss. 2015). "[A] presumption exists that an attorney's performance falls within the wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic." *Braggs v. State*, 121 So. 3d 269, 273 (¶11) (Miss. Ct. App. 2013). "Only where it is reasonably probable that, but for the attorney's errors, the outcome would have been different, will we find that counsel's performance was deficient." *Dartez*, 177 So. 3d at 423 (¶19).

¶19.    "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. Ct. App. 2016). This Court may address "ineffective-assistance-of-counsel claims on direct appeal only where (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.*

7

¶20. The record does not affirmatively show ineffectiveness of constitutional dimensions. Additionally, there is no stipulation by the parties that the record is adequate to address this claim. In fact, the State asserts that "this issue would best be reviewed in a motion for post-conviction relief rather than on direct appeal." Thus, we are unable to adequately and properly address Sanders's ineffective-assistance-of-counsel claim on direct appeal. We therefore deny this issue without prejudice to afford Sanders the option to pursue his claim in a post-conviction proceeding. *See Williams v. State*, 228 So. 3d 949, 952-53 (¶14) (Miss. Ct. App. 2017) ("[Appellant]'s ineffective-assistance-of-counsel claim is more appropriately brought during postconviction proceedings, and we therefore deny relief without prejudice as to [his] right to pursue this claim during postconviction proceedings.").

CONCLUSION

¶21. We find sufficient evidence to support Sanders's convictions of first-degree murder and possession of a firearm by a convicted felon. Sanders's ineffective-assistance-of-counsel claim is denied without prejudice. The judgment of the Pike County Circuit Court is affirmed.

¶22. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**