# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-KA-00190-SCT

*TYRONE BODY a/k/a TYRONE FITZGERALD BODY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2019 |
| TRIAL JUDGE: | HON. JOHN H. EMFINGER |
| TRIAL COURT ATTORNEYS: | WESLEY THOMAS EVANS |
| | BRAD MARSHALL HUTTO |
| | CYNTHIA A. STEWART |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CYNTHIA A. STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BRITTNEY S. EAKINS |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/20/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., ISHEE AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1. Tyrone Body appeals his conviction of burglary of a dwelling, arguing that (1) the evidence was insufficient to support his conviction; (2) his Fifth Amendment right against self-incrimination was violated; (3) his indictment was legally insufficient; and (4) his twenty-five-year sentence constituted cruel and unusual punishment. This Court finds no error and affirms Body's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. In the early morning hours of November 10, 2018, Officer Jermaine Hamlin and other officers of the Madison County Sheriff's Office were dispatched to the Canton Garden Apartments. They had been advised of a disturbance that involved a shotgun.

¶3. The officers approached the second floor to the apartment in question and noticed a man peek his head out of the apartment window and then back away. In response, the officers drew their weapons and instructed the occupants to come out with their hands up. Tyrone Body emerged from the apartment first followed by Kanosha Brown, who appeared to have sustained injuries from a physical altercation due to her swollen nose, burst lip, and bruises on her face.

¶4. Body and Brown were both detained, and the officers proceeded to secure the apartment. Officer Hamlin testified that he first noticed that the latch used to lock the front door had been broken, and a piece of wood appeared to be chipped off of the back of the door, which implied that someone had forced their way inside. Further into the apartment, he discovered Brown's four minor children and recovered a cocked and loaded .12 gauge Beretta firearm under the couch. Body was thereafter taken into custody.

¶5. On March 12, 2019, a grand jury in Madison County indicted Body for burglary of a dwelling (Count 1) and possession of a firearm (Count 2) by a convicted felon. A month later, in Madison County Justice Court, Body pled guilty to a misdemeanor charge of domestic violence that occurred on the date of the burglary. His trial was held on August 19, 2019, September 3, 2019, and September 16, 2019. Body stipulated that he was a nonviolent habitual offender pursuant to Mississippi Code Section 99-19-81 (Rev. 2020).

¶6.     At trial, the State called Officer Hamlin and Brown to testify; Body did not call any witnesses. Officer Hamlin testified to the events of that night, and Brown provided her own account.

¶7.     According to Brown, at about nine o'clock on the night of November 9, Body picked up Brown, who was his mistress, and her four daughters from her apartment. Body then drove to Gluckstadt and checked them into a hotel.[1] While Body and Brown talked, the girls watched cartoons, but they soon began to complain they were thirsty. Brown told Body she wanted to leave, but he refused. As a result, Brown called her former boyfriend Darian Slaughter to come over and drive her and her children back home.

¶8.     Body said "nasty stuff" to Slaughter when he arrived but allowed them to leave the hotel. But as soon as Brown left, Body and Body's wife continuously attempted to contact her. Brown ignored their calls and blocked their individual phone numbers.

¶9.     About ten to fifteen minutes after Brown had arrived at her apartment, she testified that Body broke into her locked apartment with a shotgun and accused her of sleeping with other men. Slaughter, who had remained with Brown, subsequently jumped out of the back window. Body seized Brown's phone and searched the apartment. Brown ordered Body to leave her home, and a physical altercation ensued. A neighbor heard the fight and contacted law enforcement.

---

[1] Body did not want to stay at Brown's apartment because he was fighting with his cousin's boyfriend, who knew Body would be with Brown, and wanted to leave town to avoid him.

¶10.    The jury found Body not guilty of possession of a firearm by a convicted felon but guilty of burglary of a dwelling. He was sentenced to twenty-five years without parole in the custody of the Mississippi Department of Corrections as a habitual offender. Body's attorney filed a motion for a new trial or a judgment notwithstanding the verdict (JNOV) and argued (1) that the lack of evidence of breaking and entering was insufficient to support the jury verdict, (2) the reference to assault in Count 1 of the indictment was not further defined, (3) the sentence was excessive and violated Body's state and constitutional rights, and (4) there was improper documentation for Body's old convictions. The court found the evidence was sufficient at trial and sentencing and that the indictment was not defective; therefore, Body's motion for a new trial and JNOV was denied. This appeal followed.

## ANALYSIS

### I.    Sufficient evidence supported Body's conviction.

¶11.    This Court uses a de novo standard of review when testing the sufficiency of the evidence. **Sanford v. State**, 247 So. 3d 1242, 1244 (Miss. 2018) (citing **Brooks v. State**, 203 So. 3d 1134, 1137 (Miss. 2016)). "In applying de novo review, we determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" **Johnson v. State**, 235 So. 3d 1404, 1410 (Miss. 2017) (quoting **Brooks**, 203 So. 3d at 1137).

¶12.    When reviewing a challenge to the sufficiency of the evidence, "the critical inquiry is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

4

doubt.'" ***Parish v. State***, 176 So. 3d 781, 785 (Miss. 2015) (quoting ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005), *abrogated by **Little v. State***, 233 So. 3d 288 (Miss. 2017)). "This Court must accept all evidence supporting the guilty verdict as true, and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence." ***Burleson v. State***, 166 So. 3d 499, 512 (Miss. 2015) (citing ***McClain v. State***, 625 So. 2d 774, 778 (Miss. 1993)).

¶13. Under Mississippi Code Section 97-17-23(1) (Rev. 2020), "[b]urglary of a dwelling has two elements: (1) unlawful breaking and entering, and (2) intent to commit a crime therein." ***Alston v. State***, 287 So. 3d 182, 185 (Miss. 2019) (internal quotation marks omitted) (quoting ***Jackson v. State***, 90 So. 3d 597, 604 (Miss. 2012)). Body asserts that the evidence is insufficient because (1) the State failed to prove beyond a reasonable doubt that Body's entry was unauthorized and that Body knew he lacked consent; (2) no evidence proved breaking and entering; and (3) no evidence proved Body entered with the intent to commit a felony.

### *A. Consent*

¶14. First, Body claims the State failed to prove that he was unauthorized to enter Brown's apartment and that he knew he lacked consent to enter. He reasons that lack of consent must be proved for a burglary conviction because every burglary necessarily includes a trespass.

¶15. Body supports his argument with case law in which one spouse burglarizes the other spouse's dwelling or marital residence. He insists that, according to hornbook law and in cases of marriage or its functional equivalent, spouses are recognized to have "conjugal

5

rights," and per the marriage contract, the spouse would expect to be admitted into the marital dwelling absent a restraining order or an order granting one spouse exclusive possession of the marital dwelling. *See Mitchell v. State*, 720 So. 2d 492 (Miss. Ct. App. 1998); *Tribble v. Gregory*, 288 So. 2d 13 (Miss. 1974), *distinguished in Choctaw, Inc. v. Wichner*, 521 So. 2d 878 (Miss. 1988); 12A C.J.S. *Burglary* § 38 (2015).

¶16.    This argument, however, is without merit.  No evidence suggests Body had an ownership interest in Brown's apartment or that Body and Brown had any form of a marital relationship outside of an ongoing affair.  Therefore, Body lacked implied consent to enter Brown's apartment.

¶17.    In *Bowman v. State*, 283 So. 3d 154 (Miss. 2019), the defendant, like Body, also for the first time on appeal, argued that the State failed to prove he lacked or knew he lacked consent to enter a hunting camp where he knew his wife was residing that night.  *Id.* at 158, 162, 164.  Bowman claimed he was able to see evidence of his wife's unfaithfulness from outside of the cabin and entered through a sliding glass door because the front door was locked.  *Id.* at 158.  He located his wife and then proceeded to physically assault her and her alleged paramour.  *Id.*

¶18.    The jury found Bowman guilty of burglary, and he appealed.  *Id.* at 160.  This Court upheld Bowman's conviction and determined:

> Instead, "[c]onsent is an affirmative defense to the charge of burglary rather than an essential element of the offense."  13 Am. Jur. 2d *Burglary* § 54 (2019).  Burglary has only two required elements—the "(1) 'breaking and entering the dwelling house or inner door of such dwelling house of another' (2) 'with the intent to commit some crime therein[.]'" *Windless v. State*, 185

6

So. 3d 956, 960-61 (quoting Miss. Code Ann. § 97-17-23(1) (Rev. 2014)). We note that Bowman *never* argued a consent defense.

*Id.* at 162. The State is not required to prove lack of consent as a required element of burglary. *Id.* Body, like Bowman, never attempted to raise or submit a jury instruction in relation to this consent theory of defense during his trial; therefore, he waives it as an issue for appeal. *Id.*

¶19. Moreover, the evidence suggests Body lacked explicit permission to enter the apartment. Brown testified she ignored Body's calls prior to his arrival and that her door had been closed and locked with the deadbolt, which Body broke open in order to enter. Officer Hamlin's testimony corroborated these events. He described the latch that was used to lock the door appeared "busted in," and a piece of wood had been chipped off from the back of the door, indicating that someone had forced their way inside.

¶20. Viewing this evidence in a light favorable to the State, any rational trier of fact could conclude that Body lacked consent and knew he lacked consent to enter Brown's apartment. As a result, this Court finds that sufficient evidence supported that Body's entry was unauthorized.

### B. Breaking and Entering

¶21. Next, Body insists that no evidence was presented of breaking and entering because there were no pictures or receipts of repair presented to prove the door was damaged. Nevertheless, "[t]he absence of physical evidence does not negate a conviction where there is testimonial evidence." *Lenoir v. State*, 224 So. 3d 85, 94 (Miss. 2017) (internal quotation marks omitted) (quoting *Burleson*, 166 So. 3d at 512).

7

¶22.    Our case law has defined an actual breaking as "any act or force, however[] slight, 'employed to effect an entrance through any usual or unusual place of ingress, whether open, partly open, or closed.'" *Johnson*, 235 So. 3d at 1410 (internal quotation marks omitted) (quoting *Templeton v. State*, 725 So. 2d 764, 766 (Miss. 1998)).  "[M]erely walking through an open door does not satisfy the 'breaking' requirement for burglary of a dwelling." *Watson v. State*, 123 So. 3d 446, 448 (Miss. 2013).  While the jury at Body's trial was not presented with physical evidence of the condition of Brown's door that night, they were able to hear testimonial evidence: Brown provided eyewitness testimony that Body had broken through her closed and deadbolt-locked door to enter her apartment.  Additionally, Officer Hamlin testified that the damaged condition of Brown's door when the police arrived supported Brown's account of the events.

¶23.    In light of our standard of review, this Court finds that sufficient evidence supported the jury's finding that Body broke and entered Brown's apartment.

### C.    *Intent to Commit a Felony*

¶24.    Body argues there was no evidence that he entered the premises with the intent to commit a crime.  He insists that he and Brown had an ongoing relationship, and he entered Brown's apartment with the intent to discuss his desire to leave his wife.  The argument that ensued thereafter, he claims, does not constitute breaking and entering with the intent to commit assault.  Additionally, Body argues that the fact the jury acquitted him of possession of a firearm evidences his lack of the requisite intent to commit assault.

8

¶25. "One of the essential elements of the crime of burglary is the intent to commit a *specific* crime." ***Daniels v. State***, 107 So. 3d 961, 964 (Miss. 2013) (citing ***State v. Buchanan***, 75 Miss. 349, 22 So. 875 (1898)). In Body's case, in Jury Instruction Number 5, only the specific crime of *assault* was mentioned:

> Tyrone Fitzgerald Body has been charged in Count I of the Indictment with the crime of *Burglary of a Dwelling*. If you find from the evidence in this case beyond a reasonable doubt that:
>
>> 1) The Defendant, Tyrone Fitzgerald Body, on or about the 10th day of November 2018, in Madison County, Mississippi:
>>
>> 2) did unlawfully, willfully, feloniously and burglariously;
>>
>> 3) break and enter the dwelling house of Kanosha Brown;
>>
>> 4) with the intent to commit the crime of *assault* therein;
>> then in that event, you shall find the Defendant, Tyrone Fitzgerald Body, guilty of *Burglary of a Dwelling* as charged in Count I of the Indictment.
>
> If the State has failed to prove any one or more of the above-listed elements beyond a reasonable doubt, then you shall find the Defendant, Tyrone Fitzgerald Body, not guilty of Burglary of a Dwelling in Count I of the Indictment.

(Emphasis added.) Meanwhile, the separate Jury Instruction Number 6 stated:

> Tyrone Fitzgerald Body has been charged in Count II of the Indictment with the crime of *Possession of a Firearm by a Convicted Felon*. If you find from the evidence in this case beyond a reasonable doubt that:
>
>> 1) The Defendant, Tyrone Fitzgerald Body, on or about the 10th day of November 2018, in Madison County, Mississippi:
>>
>> 2) Did unlawfully, willfully, feloniously and knowingly possess a firearm, to wit: one (1) Beretta 12 gauge shotgun;

3) When, Tyrone Fitzgerald Body, had previously been convicted of a felony offense; then you shall find the Defendant, Tyrone Fitzgerald Body, not guilty of *Possession of a Firearm by a Convicted Felon*.

If the State has failed to prove any one or more of the above-listed elements beyond a reasonable doubt, then you shall find the Defendant, Tyrone Fitzgerald Body, not guilty of Burglary of *Possession of a Firearm by a Convicted Felony*.

¶26.    "[W]hen the verdicts are inconsistent, the reviewing court properly considers whether evidence was sufficient to support only those counts on which a conviction is reached." ***Jones v. State***, 95 So. 3d 641, 645 (Miss. 2012) (citing ***Jones v. State***, 95 So. 3d 672, 679 (Miss. Ct. App. 2011)).  Body was acquitted of the latter charge of possession of a firearm by a convicted felony, but the jury found him guilty of burglary of a dwelling with the intent to commit *assault*.  Assault and possession of a firearm by a convicted felon are separate charges.  Therefore, Body's argument is without merit.[2]

¶27.    Ultimately, a defendant's felonious intent "is an issue of fact which falls within the exclusive province of the jury." ***Jackson***, 90 So. 3d at 604 (citing ***Croft v. State***, 992 So. 2d 1151, 1158 (Miss. 2008)).  Regardless of the presence of the firearm, any rational trier of fact could have found beyond a reasonable doubt that Body entered Brown's apartment with the intent to commit assault.  Brown testified that Body said "nasty stuff" to Slaughter when he

---

[2] Body also argues that his burglary conviction must be reversed because it was based on his constructive possession of a firearm.  He supports this claim with case law in which the defendants' drug convictions were reversed due to failure to establish ownership to the contraband.  *See **Boyd v. State***, 204 So. 2d 165 (Miss. 1967); ***Flurry v. State***, 536 So. 2d 1340 (Miss. 1988); ***Pool v. State***, 483 So. 2d 331 (Miss. 1986).  This argument, however, also fails because as stated above, Body was acquitted of possession of a firearm, and the burglary indictment on which he was convicted stated only the crime of assault.

10

picked up her and her children from the hotel, and after she left, Body and his wife continued to call her phone until she blocked their numbers.

¶28. Ten to fifteen minutes later, Brown claimed, Body forced his way through her closed, deadbolted door and entered her apartment. He proceeded to seize Brown's phone and search the apartment for Slaughter, who had jumped out of the second-story window in fear. Body yelled at Brown for being unfaithful, and a physical altercation ensued. Additionally, Officer Hamlin testified that he witnessed the damaged door and Brown's injuries, which consisted of a swollen nose, burst lip, and bruises all around her face. As a result, there was sufficient evidence for the jury to conclude that Body entered the apartment with the requisite intent.

## II. Body's right against self-incrimination was not violated.

¶29. Next Body argues the trial court violated his right against self-incrimination because should he have testified, the State was permitted to enter a document from the Madison County Justice Court reflecting Body's plea to a misdemeanor domestic violence that occurred on the day of the burglary. The victim's name was not included in the plea nor did the plea contain Body's signature.

¶30. Before opening statements, the State asked that the plea be entered into evidence under Mississippi Rule of Evidence Rule 801(d)(2) as evidence of Body's confession to the crime of assault and acknowledgment of felon in possession of a weapon and under Rule 404(b) as evidence of intent to commit assault. Alternatively, the State asked that the plea be used for impeachment purposes should Body testify. Body's counsel argued that the plea

11

was not relevant to Body's charges; that Rule 404 prohibits the admission of other crimes to show the defendant acted in conformity with bad character; that Rule 410 prohibits statements or discussion relating to plea bargaining; and that, under Rule 403, the plea's probative value was outweighed by its prejudicial effect. The trial court ruled that the plea was a court document, not a confession, and that there was no notice of intent under Rule 404(b):

> So under 404(b), under 403, and for the reasons I've said, I'm going to deny the State's motion to introduce this in its case-in-chief. However, if—this document, however, if the Defendant makes statements that are contradicted, I will revisit that prior to cross-examination of the Defendant. So this document should not be mentioned unless and until further order of the Court.

¶31. Both the United States and Mississippi Constitutions protect defendants against self-incrimination. *See* U.S. Const. amend. V (no person "shall be compelled in any criminal case to be a witness against himself"); Miss. Const. art. 3, § 26 ("[the accused] shall not be compelled to give evidence against himself"). But "the privilege against self-incrimination can be waived so long as it is done so voluntarily and knowingly." ***Moore v. Moore***, 558 So. 2d 834, 836-37 (Miss. 1990). "When [a defendant] open[s] his mouth to discuss the merits of the case, [the defendant] also open[s] the door to cross-examination and impeachment to the same extent as any other witness in the same situation." ***Id.*** at 837.

¶32. At his trial, Body was offered the opportunity to testify in his defense:

> COURT: All right. Mr. Body, I want to make sure you understand your rights. You have a right to remain silent which means nobody can force you or compel you to give any testimony against yourself. Do you understand that?
>
> BODY: Yes, sir.

12

COURT: That means nobody can force you to testify here today. Do you understand that?

BODY: Yes, sir.

COURT: And if you do not wish to testify and you ask me to do so, then I'll give a jury instruction that says no adverse inference can be drawn by you exercising your right to remain silent. Do you understand that?

BODY: Yes, sir.

COURT: Now you can talk to Mr. Evans [defense attorney] and you can consult with whoever you wish but, ultimately, the decision is yours whether or not you wish to testify or not to testify. Do you understand that?

BODY: Yes, sir.

COURT: Do you have any questions for me about your right to either remain silent or your right to testify?

BODY: No, sir.

COURT: All right. Mr. Evans, have you talked with Mr. Body about these rights?

EVANS: Yes. I would like five minutes to confer to make a decision whether or not to testify.

COURT: Okay. But have you talked to him about these rights both the right to remain silent and the right to testify?

EVANS: Yes, sir.

COURT: All right. I'll give you a few minutes to consult with him. . . . Mr. Evans, has the defendant made a decision as to whether or not he's going to testify?

EVANS: Your honor, the Defendant will exercise his Fifth Amendment right not to testify.

COURT: All right. Mr. Body, you've talked to Mr. Evans. Is that your decision?

BODY: Yes, sir.

COURT: All right. Let the record reflect the Defendant has indicated that he's decided not to testify.

¶33. Body's decision not to testify was of his own volition and did not violate his right against self-incrimination. His argument that he was "deprived of his right by the [c]ourt's erroneous ruling if he testified the [c]ourt would have admitted [the plea]" misconstrues the lower court's ruling. The court denied the State's motion to enter the plea into its case-in-chief and only mentioned revisiting the matter for impeachment purposes *if* Body testified *and* provided conflicting testimony. Body did not testify, so this issue is without merit.

### III. The indictment accurately identified the assault on which the burglary charge was predicated.

¶34. Body's indictment stated: "Tyrone Fitzgerald Body, on or about the 10th day of November, 2018, in the county aforesaid and with the jurisdiction of this Court, did unlawfully, willfully, feloniously and burglariously break and enter the dwelling house of Kanosha Brown, with the *intent to commit the crime of assault therein . . . .*" Body claims the indictment (1) failed to define the alleged assault and (2) did not adequately charge an intent to commit a felony.[3]

#### A. *Essential Elements of the Offense and Informative Charges*

---

[3] Body concedes that he did not object to the legal sufficiency of his indictment at his trial. But this Court recognizes that "[s]uch objections to the sufficiency of the indictment may be raised for the first time on appeal." **Tucker v. State**, 47 So. 3d 135, 137 (Miss. 2010) (citing **Havard v. State**, 928 So. 2d 771, 801 (Miss. 2006)).

14

¶35. Body insists the indictment failed to define the assault because the charge "to commit the crime of assault therein" does not name or describe the crime. He supports his argument with case law stating that the failure to state the essential elements of the underlying crime renders a burglary indictment void under Mississippi law. *Buchanan*, 22 So. at 875 (indictment charging "intent to commit some crime" was insufficient); *Irby v. State*, 4. So. 2d 881 (Miss. 1941) (indictment charging "intent to commit some crime therein" was defective due to failure due to specify the crime); *Crosby v. State*, 2 So. 2d 813 (Miss. 1941); *In re Jenkins*, 274 So. 2d 143, 144-45 (Miss. 1973) (fatal error in failure to prove who owned the burglarized places).

¶36. This is incorrect and a misinterpretation of our case law. In the cases Body cites, the indictments failed due to vague language about intent to commit "some crime" and failure to include ownership details. Body's indictment, on the other hand, stated "the intent to commit the crime of *assault* therein" and specified it was "the dwelling house of Kanosha Brown."

¶37. Moreover, this Court has already decided this exact issue in *Booker v. State*, 716 So. 2d 1064 (Miss. 1998). There, the defendant also argued the indictment against him for burglary "did not state with the requisite particularity the underlying crime or intent." *Id.* at 1066. Almost identical to Body's, Booker's indictment read:

> Sam Booker a/ka/ Sammie Lee Booker
> in said County and State on or about the 23rd day of January, A.D., 1995 did
> then and there willfully, unlawfully, feloniously and burglariously break and
> enter the dwelling house of Linda Easterling, at a time when said dwelling was
> occupied by Linda Easterling, said SAM BOOKER A/K/A SAMMIE LEE

15

BOOKER having the *intent to commit an assault*, in violation of Section 97–17–21[4] of the Mississippi Code of 1972, annotated.

*Id.* at 1066-67 (emphasis omitted) (emphasis added).

¶38.    This Court held:

[T]he crime of burglary does not contain two separate and distinct "subcrimes," depending on the nature of the victim, which must be specified to indicate whether the defendant is being indicted under subsection (1) or (2) of the statute.  Rather, the intent to commit some crime, be it a felony or a misdemeanor, is simply an element of the crime of burglary.  *See Ashley v. State*, 538 So.2d 1181, 1184 (Miss. 1989) ("the word 'crime' in our burglary statutes includes misdemeanors as well as felonies").  Even in light of the precision required by *Peterson* [*v. State*, 671 So. 2d 647 (Miss. 1996)], Booker was fully notified of the charges against him by the language "with the intent to commit an assault," which clearly enunciated that he need not be prepared to defend himself against charges of burglary with the intent to commit assault with a deadly weapon, rape, larceny or whatever. That the indictment charged him with burglary with the intent to commit assault, in general terms, provided sufficient notice of the charges against him.

*Id.* at 1067-68.

¶39.    Likewise, Body's indictment fully notified him of the charges against him by the language "with the intent to commit an assault therein."

---

    [4] Mississippi Code Section 97-17-21 (repealed Apr. 11, 1996) defined burglary as follows:

Every person who shall be convicted of breaking and entering, in the day or night, the dwelling house of another, in which there shall be, at the time, some human being, with intent to commit some crime therein, either by forcibly bursting or breaking the wall, or an outer door, window or shutter, of a window of such house, or the lock or bolt of such door, or the fastening of such window or shutter, or by breaking in in any other manner, or with the assistance of one or more confederates, then present and assisting, or by unlocking an outer door by means of false keys, or by picking the lock thereof, shall be guilty of burglary, and imprisoned in the penitentiary not less than seven years nor more than fifteen years.

16

###### B. *"Crime"*

¶40. Next Body duplicates the defendant's argument in ***Newburn v. State***:

> The appellant also contends that the indictment did not adequately charge an intent to commit a felony. He points out that section 2036, Mississippi Code 1942 Annotated (1956)[5] is in fact declaratory of the common law and requires that the State must show that the intruder intended to commit a "felony" in the dwelling, because—it is said—the common law requires such proof, and the word "crime" set out in the statute means a "felony."

***Newburn v. State***, 205 So. 2d 260, 264 (Miss. 1967). In that case, this Court interpreted the statutory language "'with intent to commit some crime therein,' [to] include a misdemeanor as well as a felony." ***Id.*** at 265; *see also* ***White v. State***, 195 So. 3d 765, 769 (Miss. 2016) ("Rather, the *intent* to commit some crime, be it a felony or misdemeanor, is simply an element of the crime of burglary." (internal quotation marks omitted) (quoting ***Windless***,185 So. 3d at 961)); ***Ashley***, 538 So. 2d at 1184 ("The word 'crime' in our burglary statutes includes misdemeanors as well as felonies."). Therefore, this Court finds Body's argument meritless.

#### IV. Body's sentence was not cruel and unusual punishment.

¶41. Finally, Body poses an unusual argument before this court: that his twenty-five year sentence for burglary of a dwelling as a Section 99-19-81 habitual offender constitutes cruel and unusual punishment because of the "horrific conditions and life-threatening

---

[5] In 1967, Mississippi's burglary statute established burglary of a dwelling house as "breaking and entering, in the day or night, the dwelling house of another, in which there shall be, at the time, some human being, *with intent to commit some crime therein* . . . ." Miss. Code Ann. § 2306 (1942) (emphasis added). The same language "with intent to commit some crime therein" is utilized in our state's current burglary statute, Section 97-17-23.

circumstances as part of incarceration in the Mississippi correctional system."[6]  To support

his claim, Body relies solely on an April 2020 news article from the *National Public Radio*,

which had interviewed an inmate's mother whose son was injured in a prison riot and

contained pictures from Parchman's June 2019 health inspection.

¶42.    Body does not specifically argue that his twenty-five year sentence is excessive or

disproportionate to the offense committed.  Mississippi Code Section 97-17-23(2) (Rev.

2020) dictates that a person convicted of burglary shall serve not less than three but no more

than twenty-five years in prison.  And this Court has consistently held that "a sentence will

not [be] disturbed on appeal so long as it does not exceed the maximum term allowed by

---

[6] This is the first time Body raised this specific argument in regard to the quality of Mississippi prison conditions.  At trial, during his motion for a judgment notwithstanding the verdict, Body's counsel noted:

> I would also argue that on the—in—in the case of the sentencing as a habitual that there was a failure to adequately hold a hearing and enter the proper proof to support the non-violent habitual and that, therefore, this sentence is excessive and a violation of the 8th and 14th Amendments to the United States Constitution and the corresponding sections of the Mississippi Constitution.

"An objection must be made with specificity, and failure to articulate the grounds for objection constitutes a waiver of the alleged error."  ***Ross v. State***, 954 So. 2d 968, 987 (Miss. 2007).  Furthermore, "an objection cannot be enlarged in the reviewing court to embrace an omission not complained of at trial."  ***Smith v. State***, 986 So. 2d 290, 295 (Miss. 2008) (citing ***Morgan v. State***, 741 So. 2d 246, 253 (Miss. 1999)).  Mississippi Rule of Appellate Procedure 28(a)(3) requires that "[a] statement shall identify the issues presented for review" but that "the court may, at its option, notice a plain error not identified or distinctly specified."  Therefore, as applied to the case at hand, "[u]nder the plain-error doctrine, we can recognize obvious error which was not properly raised by the defendant on appeal, and which affects a defendant's 'fundamental, substantive right.'"  ***Smith***, 986 So. 2d at 294.

statute." ***Stromas v. State***, 618 So. 2d 116, 122 (Miss. 1993) (citing ***Wallace v. State***, 607 So. 2d 1184, 1188 (Miss. 1992)).

¶43.    More to Body's point, "[t]he Eighth Amendment requires prison officials to provide 'humane conditions of confinement' with due regard for inmate health and safety." ***Valentine v. Collier***, 978 F.3d 154, 162 (5th Cir. 2020) (citing ***Farmer v. Brennan***, 511 U.S. 825, 832, 837, 114 S. Ct. 1970, 1976, 1979, 128 L. Ed. 2d 811 (1994)). "[A] prisoner must show not only that the conditions were objectively 'so serious as "to deprive prisoners of the minimal civilized measure of life's necessities," but also that 'the responsible prison officials acted with deliberate indifference to [the prisoner's] conditions of confinement.'" ***Alexander v. Tex. Dep't of Crim. Just.***, 951 F.3d 236, 241 (5th Cir. 2020) (citations omitted).[7]  To constitute deliberate indifference, prison officials must have "refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for [his] serious medical needs." ***Domino v. Tex. Dep't of Crim. Just.***, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks omitted) (quoting ***Johnson v. Treen***, 759 F.2d 1236, 1238 (5th Cir. 1985)).

¶44.    In ***Alexander***, the prisoner was moved to closed custody after a prison riot.  951 F.3d at 238.  He argued his Eighth Amendment protection against cruel and unusual punishment was violated due to unsanitary cell conditions such as roaches and rat droppings in his cell. ***Id.*** at 238, 241.  He alleged he reported these conditions to the officers on shift who reported it to maintenance. ***Id.***  The Fifth Circuit held that the prisoner's claim was "meritless because

---

[7] Decisions of the United States Court of Appeals for the Fifth Circuit are not binding authority on this Court.

he failed to allege that any of the defendants knew of and ignored the condition of the cell." *Id.* Though the prisoner reported these conditions to the officers, "he cannot make the requisite showing that they *in fact* 'drew the inference' that there was a substantial risk of serious harm." *Id.*

¶45. Here, Body is unable to satisfy either prong of the analysis. He merely provided a news article detailing a mother's son's experience in a prison riot and pictures from a health inspection. "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no *specific* deprivation of a single human need exists." ***Wilson v. Seiter***, 501 U.S. 294, 305, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (emphasis added). Furthermore, unlike the prisoner in ***Alexander***, Body made no mention of reporting the alleged conditions of his cell to an official. As a result, deliberate indifference cannot be satisfied, and Body's Eighth Amendment claim fails.

### CONCLUSION

¶46. The record shows that sufficient evidence was presented to support Body's conviction; that his right against self-incrimination was not violated; that the indictment was legally sufficient; and that his sentence does not constitute cruel and unusual punishment. As a result, Body's conviction and sentence are affirmed.

¶47. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**

20