# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-00933-SCT

*CHADDY BROOKS a/k/a CHADDY MAE BROOKS
a/k/a CHADDY M. BROOKS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/2015 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| TRIAL COURT ATTORNEYS: | ROB LAHER |
| | DEFORREST ALLGOOD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CARRIE A. JOURDAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  KAYLYN H. McCLINTON |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/17/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., KITCHENS AND KING, JJ.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Chaddy Brooks was convicted of second-degree murder and sentenced to serve forty years in the custody of the Mississippi Department of Corrections.  She now appeals, arguing that there was insufficient evidence to convict her, and that she received ineffective assistance of counsel.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On the morning of November 22, 2013—while Brooks's boyfriend, Danielle Gore, was in the bathroom—Brooks looked through his cell phone and found text messages from

another woman. Brooks confronted Gore, and the confrontation became physical, ending with Brooks stabbing Gore in the neck with a kitchen knife.

*The 911 Call*

¶3. Brooks called 911 and told the operator that, when she and Gore had gotten into an argument, she had grabbed a knife, and as Gore was trying to take the knife from her, he had been stabbed. She explained that she "jerked the knife up and it swung in his neck when [she] jerked it up."

*Brooks's Statement to Police*

¶4. Brooks was taken to the Lowndes County Detention Center, where she told detectives that she had confronted Gore after finding text messages from a "familiar number" on his phone, and that she had punched Gore in the face, slapped him with her phone, and tried to hit him multiple times throughout the argument. According to Brooks, Gore hit her, threw her, pushed her to the floor, and threatened to "knock [her] ass out" if she hit him again. Brooks stated that Gore had been trying to hold her down while she tried to hit him, but she had broken free and grabbed a knife from the kitchen. She explained that when Gore approached her and tried to take the knife away, she had turned her back to him to keep it from Gore. According to Brooks, she was holding the knife up in the air with her right hand and she swung around and "stuck" Gore with the knife.

¶5. Brooks admitted that she did not have any injuries, and that Gore did not have a weapon at any point during the argument. Brooks stated that she had gotten the knife so

Gore would not come after her or hurt her. She also stated that she did not intend to hurt Gore, but she was frustrated, wanted to fight, and did not want him to leave.

*The Trial*

¶6.    Brooks was indicted for first-degree murder under Section 97-3-19(1)(a) of the Mississippi Code. At her trial, Officer Ivan Bryan from the Lowndes County Sheriff's Department testified that when he had walked into Brooks's apartment Gore had been lying on the kitchen floor and Brooks had been sitting beside him. He further stated that a large kitchen knife had lain about ten feet from Gore's body. Bryan testified that he did not see any injuries on Brooks's body, and that she had stated she had none. Also, paramedics examined her and found she required no medical attention.

¶7.    Brooks testified in her own defense, stating that she had asked Gore to leave her apartment. She explained that Gore had started to put his shoes on but had stopped and acted like he was not going to leave. She stated that she had asked him to leave again and then "rushed [past] him real fast . . . and went in the kitchen and grabbed the knife." Brooks testified that she had gotten the knife to protect herself and to show Gore that she was serious about wanting him to leave. She stated that when Gore had seen her with the knife he had started walking toward her, so she had turned her back to him to keep the knife away from him. According to Brooks, Gore had kept trying to grab the knife from behind her.

¶8.    On cross-examination, Brooks admitted that she did not tell the police that she had gotten the knife to make Gore leave. She also admitted that she had been the initial aggressor, that Gore had not been walking toward her to fight her, and that he did not have

3

a weapon. She stated she did not know whether he was going to refuse to leave when he stopped putting his shoes on. Finally, Brooks admitted that she had gotten the knife knowing that Gore was not going to do anything to hurt her as long as she did not hit him.

¶9.    Brooks went on to claim—for the first time—that she was injured as a result of the argument. According to Brooks, she had bruises on her arms and under her shirt; however, she admitted that pictures taken by the police hours after the incident did not show any bruises on her arms, hands, or face.

¶10.    The jury, after being instructed on first-degree murder, second-degree murder, and manslaughter, found Brooks guilty of second-degree murder, and the trial judge sentenced her to forty years in the custody of the Mississippi Department of Corrections. She now appeals, raising two issues: (1) insufficient evidence supported the verdict of second-degree murder and therefore her motion for a judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial should have been granted, and (2) her trial attorney provided ineffective assistance because he failed to renew his motion for a directed verdict at the close of all the evidence.

## ANALYSIS

### I.    The trial court did not err by denying Brooks's motion for a JNOV.

¶11.    We review de novo denials of motions for a JNOV because they challenge the legal sufficiency of the evidence.[1] And "'the relevant question is whether, after viewing the

---

[1] *Kirk v. State*, 160 So. 3d 685, 695 (Miss. 2015) (citing *Daniels v. State*, 107 So. 3d 961, 963 (Miss. 2013)).

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[2] We "must reverse and render if the facts and inferences 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men [or women] could not have found beyond a reasonable doubt that the defendant was guilty.'"[3]

¶12.    Brooks was convicted of second-degree murder under Section 97-3-19(1)(b) of the Mississippi Code, which provides that:

> (1)    The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
>
> . . .
>
> (b)    When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual, shall be second-degree murder."[4]

¶13.    Brooks asserts that the State did not present sufficient evidence to prove that she acted with a disregard for human life as required by Section 97-3-19(1)(b). She contends that she demonstrated the necessary regard for Gore's life by turning her back to him in an effort to keep him from being stabbed, and that Gore acted with a disregard for his own life when he approached her to take the knife away. She asks this Court to reverse her conviction and remand this case for a new trial, or in the alternative, render a manslaughter verdict.

---

[2] *Warren v. State*, 187 So. 3d 616, 627 (Miss. 2016) (quoting *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005)).

[3] *Id.* (quoting *Bush*, 895 So. 2d at 843).

[4] Miss. Code Ann. § 97-3-19(1)(b) (Supp. 2016).

¶14. Viewing the evidence as a whole, we find that sufficient evidence supported the jury's verdict of second-degree murder. The evidence presented shows that Brooks introduced a deadly weapon into a heated argument at a time when she was not being threatened, thus demonstrating the requisite disregard for human life. Brooks testified that Gore had started to put his shoes on right before she had rushed past him and grabbed the knife. Although she claimed Gore had stopped putting on his shoes, she admitted that she did not know whether or not he was going to refuse her request to leave.

¶15. Brooks also admitted that Gore did not have a weapon at any point during the argument, and that he was walking toward her to get the knife—not to harm her. She further admitted that she was the initial aggressor and Gore's threat to "knock her . . . out" meant that he would do so only if she continued to hit him. Additionally, the State presented evidence showing that Brooks did not have any visible injuries.

¶16. Brooks contends that we are obligated to take her testimony as true pursuant to the holding in *Weathersby v. State*.[5] In *Weathersby*, this Court held that "where the defendant . . . [is] the only eyewitnesses to the homicide, [his or her] version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge."[6]

---

[5] *Weathersby v. State*, 165 So. 2d 207, 147 So. 147 (Miss. 1933).

[6] *Id.*

6

This Court subsequently has held the *Weathersby* rule inapplicable in cases in which the defendant has provided conflicting stories about the homicide.[7]

¶17.    Here, Brooks told detectives that she had grabbed the knife so Gore would not attack her but later testified that she had grabbed it because she wanted to force Gore to leave. Because Brooks provided conflicting stories, she is precluded from relying on the *Weathersby* rule.

## II.    Brooks's counsel did not provide ineffective assistance of counsel.

¶18.    Brooks contends that her trial counsel provided ineffective assistance because he failed to renew his motion for a directed verdict at the close of the defense's case-in-chief, thereby barring her procedurally from challenging the sufficiency of the State's evidence.

¶19.    To prove a claim of ineffective assistance of counsel, a defendant first must show that "counsel's performance was deficient." Performance is deficient when an attorney "made errors so serious that [he or she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." [8]  Second, the defendant must show that the deficient performance prejudiced the defense.[9] The defense is prejudiced when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[10] There is "a strong but rebuttable presumption that counsel's performance falls within the broad

---

[7] *See* **Fairley v. State**, 871 So. 2d 1282, 1284 (Miss. 2000).

[8] **Strickland v. Washington**, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[9] *Id.*

[10] *Id.*

spectrum of reasonable professional assistance."[11] This Court will find that counsel's performance was deficient "[o]nly where it is reasonably probable that, but for the attorney's errors, the outcome would have been different."[12]

¶20.    In *Holland v State*, this Court held that the failure to move for a directed verdict, request a peremptory instruction, or make any post-trial motion constituted ineffective assistance of counsel because it prevented the trial judge from considering the sufficiency of the evidence.[13] This holding later was clarified in *Simon v. State.*[14]

¶21.    In *Simon*, the defendant's trial counsel moved for a directed verdict at the close of the State's case-in-chief but failed to renew it at the close of all evidence.[15] Trial counsel did, however, file post-trial motions challenging the sufficiency of the evidence, specifically a motion for a JNOV or a new trial.[16] This Court noted that:

> In *Holland*, this Court was concerned with the fact that trial counsel had completely failed to give the trial court the opportunity to review the sufficiency of the evidence at the end of the trial. Not only did counsel fail to renew his motion for [a] directed verdict at the close of all proof, he did not present the trial court with any post-trial motions.[17]

---

[11] *Dartez v. State,* 177 So. 3d 420, 422 (Miss. 2015) (citing *Strickland*, 466 U.S. at 687).

[12] *Id.* (citing *Strickland*, 466 U.S. at 687).

[13] *Holland v. State*, 656 So. 2d 1192, 1197–1198 (Miss. 1995).

[14] *Simon v. State*, 857 So. 2d 668, 690 (Miss. 2003).

[15] *Id.*

[16] *Id.*

[17] *Id.*

Because the post-trial motions challenged the legal sufficiency of the evidence, this Court held that counsel's failure to renew the motion for a directed verdict was not ineffective assistance of counsel.[18]

¶22.    Like the attorney in *Simon*, Brooks's trial counsel moved for a directed verdict at the close of the State's case-in-chief but failed to renew it at the close of all evidence.  Brooks's attorney subsequently filed a motion for a JNOV, or in the alternative, a new trial. This post-trial motion gave the lower court an opportunity to review the sufficiency and the weight of the State's evidence; therefore, we find that the failure to renew the motion for a directed verdict was not ineffective assistance of counsel.

## CONCLUSION

¶23.    Because sufficient evidence existed to convict Brooks, and because we further find that she did not receive ineffective assistance of counsel, we affirm the judgment and sentence of the Circuit Court of Lowndes County.

¶24.    **CONVICTION OF SECOND-DEGREE MURDER AND SENTENCE OF FORTY(40) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**

---

[18] *Id.*

9