# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-KA-01365-SCT

*TONY RANDELL BARNETT, JR. a/k/a TONY*
*BARNETT a/k/a BARNETT TONY RANDELL, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/23/2019 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| TRIAL COURT ATTORNEYS: | BRYAN P. BUCKLEY |
| | MATTHEW DAVIS SHOEMAKER |
| | ANDREW JAMES WILLIAMS |
| | ALEXANDER IGNATIEV |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/15/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Tony Randell Barnett, Jr., was convicted of the armed robbery of Great Southern Bank in Hattiesburg, Mississippi. The sole issue on appeal is whether the evidence presented at trial was sufficient to support Barnett's conviction. Finding no error, we affirm the conviction of armed robbery.

## FACTS AND PROCEDURAL HISTORY

¶2. The relevant events that occurred on the afternoon of July 23, 2018, are largely uncontested. That afternoon, three female employees, Kathy Shotts, Alicia Fairley, and Amy Polk, were working at Great Southern Bank located off of Highway 42 in Hattiesburg. At approximately 3:30-3:45 p.m., Shotts, a bank teller, opened the back door of the bank in order to take a smoke break. As she began to open the door, a man pulled the door open and put a gun to Shotts's head. Shotts testified that he stated, "[t]his is a robbery." The man pushed his way past Shotts, and she dropped to the ground and covered her head. The man then continued to the teller line where Polk and Fairley were working. Shotts testified that she remained on the ground with her head down until the man left the building.

¶3. Fairley testified that at approximately 3:40 p.m., she heard Shotts scream. Fairley looked up and saw a young, dark-skinned male no taller than 5'6" holding a gun to Shotts's face. The man was wearing a hat and had a white cloth mask on his face. Fairley stated that the man rushed to her, pointed a small black gun at her face, and told her to give him all of her money. Fairley complied and let him take the money from her teller drawer. The man then turned to her coworker and took the money from her coworker's drawer as well. Afterward, the man backed out of the room, said, "[d]on't move, don't do anything," and exited through the same back door he had entered.

¶4. Fairley testified that she had bait money in her drawer. Bait money is series of bills of which a bank has made photocopies. The bank logs the serial numbers on the bills, so if the bank is robbed and the money is taken, the bank can then trace that money back to any

money that was recovered from the suspect. The man took $2,343 from Fairley's drawer but did not take her bait money.

¶5.     Polk also was a teller at Great Southern Bank. She testified that, after the man pointed the gun at Fairley and took her money, he pointed the gun at Polk and ordered her to give him all of her money. She gave him $4,820 from her drawer. Polk had five fifty-dollar bills of bait money in her teller drawer. The man took the bait money as well. Polk's written statement described the man as 5'6" and 135 pounds with dark skin.

¶6.     Tommy Watkins owned Watkins Auto Sales in Hattiesburg, which was located one block down from Great Southern Bank. Tommy testified that prior to July 23, 2018, he had sold Barnett a Cadillac. Barnett's payments for the car were approximately $250 a month. However, Barnett had gotten behind on his payments, and Tommy had repossessed the car. On July 23, 2018, Tommy testified that between 2:30-3:00 p.m., Barnett arrived at Watkins Auto Sales and stated that he was there to recover his vehicle. Tommy informed Barnett that his balance was $835. Barnett replied that he would "be back in a little while." Tommy testified that Barnett had been dressed in black and had on a black backpack.[1]

¶7.     Tommy testified that when he left work around 3:30 p.m. that day, he noticed that cops were "going everywhere." He was not aware that Great Southern Bank had been robbed

---

[1]Tommy testified that Barnett "had on a fancy pair of tennis shoes, solid black with a white – I mean a real white – like, a whitewall on a tire around it." The State introduced Exhibit 54 at trial, which contained shoes and clothing recovered from Barnett at the time of his arrest. Exhibit 54 was retained by the circuit clerk and is not in the record before this Court. However, in closing argument, the State argued to the jury that Barnett had been "wearing tennis shoes like Mr. Tommy Watkins said" and asked, "[w]hat does it tell you when the shoes on the bank robber are the description of the shoes that Tommy Watkins . . . said he had on an hour before the robbery?"

at that time. His wife, Linda Watkins, informed him of the bank robbery shortly afterward. Tommy stated that a friend of his then read him the description of the bank robber. The broadcast issued from law enforcement described that robbery suspect as "a black male, possibly early 20s, blue shirt, gray sweatpants, roughly 5'6", roughly 140 [pounds]." Tommy testified that "it fit the description of my customer Tony Barnett to a T." Tommy was acquainted with a Hattiesburg police officer, so he called the officer and told him about Barnett. The officer then contacted the Hattiesburg Police Department.

¶8. At 4:26 p.m., Barnett was seen on video at the drive-through of Central Sunbelt Federal Credit Union (Central Sunbelt). That same day, between 4:30-5 p.m., Tommy stated that he called his wife, Linda, who was the office manager for Watkins Auto Sales, in order to get Barnett's address. Linda informed Tommy that Barnett was at Watkins Auto Sales at that time wanting to make a payment on his vehicle. Tommy told Linda that he suspected that Barnett was the bank robber and instructed Linda to take Barnett's money and to let him go with the car.

¶9. Linda testified that on July 23, 2018, at approximately 4:45 p.m., Barnett came to Watkins Auto Sales to pay for his car. She stated that Barnett was wearing a gray shirt. Barnett owed $835 and tendered nine one-hundred-dollar bills inside a Central Sunbelt Federal Credit Union envelope. Linda testified that Barnett first told her to keep the change but then changed his mind and told her to apply it to his next month's note. She stated that Tommy called her to ask about Barnett's address while Barnett was paying. Barnett left Watkins Auto Sales at approximately 5:05 p.m.

4

¶10. Lieutenant Dale Bounds with the Hattiesburg Police Department testified that he responded to the robbery at Great Southern Bank. When he arrived, he noticed a trail of money going from the bank toward Glendale Avenue. He then received a call from an off-duty police officer, Officer Tommy Trahan. Officer Trahan informed Lieutenant Bounds that Tommy had given him information in reference to a possible suspect, Barnett. Officer Trahan advised Lieutenant Bounds that Tommy could, by the use of global-positioning systems (GPS), track Barnett's car.

¶11. Tommy testified that he installed GPS on everything that he financed in order to locate customers who did not pay their notes. Tommy tracked the GPS on Barnett's car, and it showed that the car was located at Barnett's home address. Barnett's resided approximately a mile from Watkins Auto Sales.

¶12. Around 6:00 p.m., law-enforcement officers arrived at Barnett's residence. After officers knocked on the door, Barnett walked outside and asked what was going on. He was wearing a white t-shirt and gray shorts. Lieutenant Bounds informed Barnett that an incident had occurred and that Barnett's name had arisen as a suspect. Barnett initially consented to a search of the residence but then refused to sign a search form. In the meantime, Barnett's sister Destiny Pinder arrived at the house. Destiny did not live at the residence and advised Lieutenant Bounds that her mother, Desiree Pinder, was the owner of the residence. Destiny then called Desiree over FaceTime. Lieutenant Bounds informed Desiree of the situation and Desiree gave consent to search the home. Desiree authorized Destiny to sign the consent-to-search form. Destiny signed the consent form at 6:30 p.m.

¶13. After obtaining the consent to search, the officers entered the house with Destiny. Destiny showed the officers Barnett's room. Lieutenant Bounds testified that after stepping into the doorway of Barnett's room, the officers noticed a large sum of money scattered on the bed and on the couch. The law-enforcement officers then "backed out." Lieutenant Bounds advised a detective to obtain a search warrant for the residence. Lieutenant Bounds testified that Barnett's arrest record stated that he was 5'5" and weighed approximately 135-145 pounds.

¶14. Officer Jeff Byrd with the Hattiesburg Police Department Crime Scene Unit testified that, after the search warrant had been obtained, he entered Barnett's residence. In Barnett's room, he saw a large amount of cash on the bed, on the couch, and on a mantel. Officer Byrd testified that five fifty-dollar bills that were recovered from Barnett's bed matched the serial numbers from the Xeroxed copies of the bait money. Overall, a one-hundred-dollar bill was recovered from the mantle, $960 was recovered from the couch, and $3,540 was recovered from Barnett's bed. Officer Byrd also observed a handgun on a small refrigerator inside the bedroom. The handgun was a Ruger .380 LCP, with an extended magazine, eight bullets, and a live round in the chamber.

¶15. Detective Chadra Daniels, a detective with the Hattiesburg Police Department, testified that the handgun found in Barnett's room had an extended magazine, which is longer than a normal magazine and extends out of the bottom of a weapon. She testified that she had reviewed the bank's security footage of the robbery and that the robber had used a handgun with an extended magazine. She testified that, overall, the following money was

6

recovered: $4,803 was collected by the crime scene unit from Barnett's residence and Great Southern Bank's parking lot; $900 had been paid to Watkins Auto Sales; $100 had been deposited at Central Sunbelt Federal Credit Union; $60 had been paid by Barnett on a cell phone; and $140 was collected from Barnett's person. The total amount recovered was $6,003.

¶16. Counsel for Barnett pointed out that the bank robber had stolen $7,413, yet only $6003 had been recovered from Barnett. Therefore, a difference of approximately $1,400 existed between the amount recovered from Barnett and the amount stolen from Great Southern Bank.

¶17. On February 6, 2019, a Forrest County Grand Jury indicted Barnett for armed robbery under Mississippi Code Section 97-3-79 (Rev. 2020). Barnett's case proceeded to trial on June 17, 2019. After the State rested its case, Barnett moved for a directed verdict and argued that the State merely proved that Barnett had received stolen property and did not prove that Barnett had robbed the bank. The trial court found that the State had presented a "strong circumstantial evidence case" and overruled the motion. The defense called one witness, Larry Keyes, Jr. Keyes had been subpoenaed but did not show to testify at trial. The trial court issued a bench warrant for Keyes and granted an early recess. The parties reconvened the next day, but authorities were unable to find Keyes.

¶18. Counsel for Barnett made a proffer of what Barnett believed Keyes's testimony would be, stating:

> Larry Keyes, Jr. had personal contact with Tony Barnett, one occasion, earlier in the afternoon either immediately prior to Tony Barnett going to Tommy

7

Watkins' place of business at 2:50 or immediately after; and then subsequent to that, at which point Tony Barnett borrowed his bike; and then subsequent to that but before Tony Barnett went to the Central Sunbelt Federal Credit Union, he returned the bike to Larry Keyes, Jr. at roughly around the time but not exactly coincident with the time of the robbery but within ten minutes in either direction. Of course, Larry Keyes' residence at the time and still is 133rd – or 133 – or 135 East 7th Street in Hattiesburg which is itself approximately a mile from Watkins Auto Sales and it's just over a mile from the bank and is less than a mile from 201 West 5th Street in Hattiesburg which is the Barnett residence. So he is therefore not a true alibi witness but would have provided times and places at which Tony Barnett was in his presence that would account for Tony Barnett perhaps not being at the robbery.

The defense then rested its case. The jury was given a circumstantial-evidence instruction.

¶19. Barnett was convicted of armed robbery on June 19, 2019, and was sentenced to serve a term of forty years in the custody of the Mississippi Department of Corrections.

## ISSUE

¶20. Whether the evidence presented at trial was sufficient to support Barnett's conviction.

## DISCUSSION

¶21. A trial court's ruling on the legal sufficiency of the evidence is reviewed de novo. *Haynes v. State*, 250 So. 3d 1241, 1244 (Miss. 2018) (citing *Brooks v. State*, 203 So. 3d 1134, 1137 (Miss. 2016)). "[A]ll credible evidence [that] is consistent with guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Id.* (second alteration in original) (internal quotation marks omitted) (quoting *Burrows v. State*, 961 So. 2d 701, 705 (Miss. 2007)). "'If the facts and inferences so considered point in favor of the defendant on *any* element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,' this Court must reverse and render." *Henley v. State*, 136 So.

8

3d 413, 415-16 (Miss. 2014) (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶22.    The evidence presented by the State in this case was purely circumstantial. "Circumstantial evidence is 'evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist.'" *McInnis v. State*, 61 So. 3d 872, 875 (Miss. 2011) (quoting *Keys v. State*, 478 So. 2d 266, 268 (Miss. 1985)). In circumstantial-evidence cases, the State must prove that the defendant is guilty "beyond a reasonable doubt and *to the exclusion of all reasonable hypotheses consistent with innocence*." *Id.* at 875-76 (citing *State v. Rogers*, 847 So. 2d 858, 864 (Miss. 2003)).

¶23.    Barnett admits that he was in possession of Great Southern Bank's bait money but argues that the State failed to prove that Barnett had robbed the bank. Barnett's main contention is the "significant discrepancy" between the amount of cash recovered compared to the amount stolen from the bank. Barnett's argument seems to be that there was a limited amount of time between the robbery and his arrest; therefore, if he robbed the bank, the full amount of money stolen from the bank should have been recovered. We find no merit in Barnett's contention. Law enforcement recovered more than $6,000 of the total $7,413 stolen from the bank. Detective Daniels testified that, in her experience, law enforcement very seldomly recovers all of the money from a robbery. She testified that the amount of money recovered in this case was "a significant amount."

¶24.    Barnett argues that the three bank employees did not identify him as the shooter and asserts that the general description given to the police was so vague as to identify a wide array of citizens in Forrest County. Although Barnett is likely correct in stating that there are

9

numerous persons in Forrest County that fit the description of the robber given to law enforcement, Barnett's argument is unpersuasive. The State produced evidence showing that Barnett not only fit the physical description of the robber but also had in his possession large sums of cash, including the five fifty-dollar bills of bait money that had been taken in the bank robbery mere hours before. This Court also has previously upheld armed-robbery convictions in circumstantial-evidence cases despite having vague descriptions of the assailants. *See Johnson v. State*, 630 So. 2d 51, 52-53 (Miss. 1993) (the assailants were described as "white men dressed in dark clothing"); *Gangl v. State*, 612 So. 2d 333, 334 (Miss. 1992) ("The two individuals were described as being white males between the ages of 25 to 30.").

¶25. Barnett lastly argues that the evidence is insufficient because no DNA or fingerprints were recovered from the bank. However, the lack of fingerprints and DNA is not fatal to the State's case. Fairley and Detective Daniels testified that the robber was wearing gloves and a hat. Further, "[t]he absence of physical evidence does not negate a conviction where there is testimonial evidence." *Lenoir v. State*, 224 So. 3d 85, 94 (Miss. 2017) (internal quotation marks omitted) (quoting *Burleson v. State*, 166 So. 3d 499, 512 (Miss. 2015)).

¶26. Armed robbery is defined as:

> (1) a felonious taking or attempt to take; (2) from the person or from the presence; (3) the personal property of another; (4) against his will; (5) by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon.

*Brent v. State*, 296 So. 3d 42, 48 (Miss. 2020) (quoting *Cowart v. State*, 178 So. 3d 651, 666 (Miss. 2015) (citing Miss. Code Ann. § 97-3-79 (Rev. 2014))). Testimony and video

evidence showed that, on July 23, 2018, at approximately 3:40 p.m., a man armed with a handgun stole more than $7,000 from the teller drawers of two employees of Great Southern Bank. The man was described as being 5'6" in height and weighing approximately 135 pounds. Lieutenant Bounds testified that Barnett's arrest record stated that Barnett was 5'5" and weighed 135-145 pounds. The handgun used in the robbery was small, black, and had an extended magazine. Approximately three hours after the robbery had occurred, a loaded handgun fitting that description was found in Barnett's room. Law enforcement additionally found large amounts of cash in Barnett's room, including the five fifty-dollar bills of bait money.

¶27. Moreover, shortly before the robbery, Barnett had walked to Watkins Auto Sales and had asked how much money he owed in order to recover his car from repossession. A short time after the robbery, Barnett returned to Watkins Auto Sales and paid for his car with cash. When viewed with all reasonable inferences in favor of the conviction, a rational trier of fact could find beyond a reasonable doubt all elements of armed robbery. Accordingly, we affirm Barnett's conviction and sentence.

¶28. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

11