# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00610-COA

CASEY EARL COLLINS A/K/A CASEY COLLINS             APPELLANT

v.

STATE OF MISSISSIPPI             APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/2024 |
| TRIAL JUDGE: | HON. SMITH MURPHEY |
| COURT FROM WHICH APPEALED: | TALLAHATCHIE COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: AMBER LAUREN STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DANIELLE LOVE BURKS |
| DISTRICT ATTORNEY: | JAMES STEPHEN HALE JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/14/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND WEDDLE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. On December 6, 2023, Casey Collins was indicted by a Tallahatchie County grand jury on one count of possession of more than 0.1 but less than 2 grams of methamphetamine in violation of Mississippi Code Annotated section 41-29-139(c) (Rev. 2022). Collins was indicted as a habitual offender and a subsequent drug offender pursuant to Mississippi Code Annotated sections 99-19-81 (Rev. 2020) and 41-29-147 (Rev. 2022). Collins pled not guilty but was convicted after a jury trial. The trial court sentenced Collins to serve six years in the custody of the Mississippi Department of Corrections without eligibility for parole. Collins

appeals, claiming that "the evidence was legally insufficient to support [his] conviction." Finding the evidence sufficient, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2. Collins was a suspect in a murder investigation in Charleston, Mississippi. An officer involved in the investigation asked Deputy Benjamin McKinney of the Tallahatchie County Sheriff's Department whether the Sheriff's Department had any outstanding warrants for Collins to justify taking him into custody. When Deputy McKinney found there were none, he contacted the justice court, which confirmed there were two unserved misdemeanor warrants against Collins. Deputy McKinney obtained the warrants, and three officers went to Collins' residence to execute them. While arresting Collins, the officers discovered drugs in plain view. As a result, the State charged Collins with possessing more than 0.1 but less than 2 grams of methamphetamine in violation of Mississippi Code Annotated section 41-29-139(c). Collins entered a plea of not guilty.

¶3. Collins' trial was held on February 27, 2024, and the State called Deputy Jerry Williams as its first witness. At the time of Collins' arrest, Deputy Williams was employed at the Tallahatchie County Sheriff's Department and was the chief of police of Charleston, Mississippi. Deputy Williams testified that on November 29, 2022, he, along with Investigator Travis Nicholas and Agent Jerry Stanton, executed two misdemeanor arrest warrants on Collins. Deputy Williams testified that he obtained the arrest warrants from Deputy Benjamin McKinney.

¶4. Deputy Williams went to Collins' residence to execute the warrants. He gained

2

entrance to the residence after speaking to one of Collins' family members and informing her of the warrants. Once inside the residence, Collins' mother told Deputy Williams that he was in the laundry room, which had a "quilt or sheet" over the doorway. Deputy Williams explained that he pulled back the sheet and found Collins sleeping on the floor. Deputy Williams had Collins "turn over" to handcuff him, and in the process found "a clear plastic baggie with a clear smoky-colored substance" that appeared to be methamphetamine. The baggie "was under his body." Deputy Williams also testified that while arresting Collins, Investigator Nicholas found "a little black pouch" with a "glass pipe sticking out of it which is known to be used to smoke ice."[1] Inside the bag was "a rock-like substance" that they believed to be crack cocaine. The black bag was "right . . . beside[]" Collins, within arm's reach. Deputy Williams took pictures of the evidence, and Investigator Nicholas collected the items and gave them to Deputy McKinney, who sent them to the crime lab in Columbus.

¶5.    The State's next witness was Investigator Travis Nicholas, who was employed as an investigator with the Charleston Police Department at the time of Collins' arrest. He testified Deputy Williams and Agent Stanton accompanied him in executing the arrest warrant on Collins. Investigator Nicholas explained that they knocked on the door of Collins' residence, and one of Collins' family members answered the door. Investigator Nicholas and the other officers found Collins sleeping on a pallet in the laundry room. Investigator Nicholas testified that Deputy Williams called Collins' name to wake him up. When he woke up, "he raised his head up," and "there was a plastic, clear . . . bag laying under him." Investigator Nicholas

---

[1] "Ice" is a colloquial term used to refer to methamphetamine.

explained that Deputy Williams handcuffed Collins while he was lying on the floor. He also testified that there was "a black pouch laying on the floor," and it appeared to have "a glass pipe" sticking out of it. Investigator Nicholas picked up the black pouch and unzipped it. After looking inside the pouch, he confirmed that the item sticking out was a glass pipe, and also he found a brown sack containing white powder. Investigator Nicholas testified that while they were arresting Collins, Collins assured the officers that the drugs were not his.

¶6.     The State also called Deputy Benjamin McKinney to testify. At the time of Collins' arrest, Deputy McKinney was the active narcotics investigator and Mississippi Bureau of Narcotics agent for the Tallahatchie County Sheriff's Department. Deputy McKinney testified that he was asked by an officer if the sheriff's department "ha[d] anything on Mr. Casey[,]" such as an arrest warrant. He explained that the sheriff's department did not have an arrest warrant for Collins, but the deputy contacted the justice court, which had two active warrants for Collins that had not been executed. Deputy McKinney testified that he went to the courthouse to pick up the two warrants, went back to his office, and then gave the warrants to Deputy Williams, Investigator Nicholas, and Agent Stanton. Deputy McKinney did not execute the search warrant with the three officers. He explained that after the warrant was executed, Deputy Williams gave him the "black bag with drugs in it and a clear plastic baggie with what appeared to be crystal meth." Deputy McKinney testified that he labeled the items and took them to the Columbus Forensics Laboratory for a test analysis.

¶7.     The State's next (and final) witness was Hunter Mooney. Mooney was employed as a "seized drug analyst" at the Mississippi Forensics Laboratory in Pearl, Mississippi. Prior

to his employment at the Mississippi Forensics Lab, Mooney was a drug analyst and crime scene investigator at the crime lab in Columbus. Mooney testified that when he worked in the Columbus crime lab, he analyzed the items that Deputy McKinney submitted. Mooney testified that the item in the plastic bag was .67 grams of methamphetamine, and the item in the black bag was .19 grams of cocaine and methamphetamine. Mooney explained that methamphetamine and cocaine are Schedule II substances.

¶8.     After Mooney's testimony, the State rested, and the defense moved for a directed verdict, arguing that the State failed to establish that Collins was in possession of the drugs. The court denied the defense's motion and stated that since "the defendant was lying on top of the . . . controlled substance," a "jury question [was] created."

¶9.     Casey Collins testified in his own defense. Collins testified that he had lived in his mother's home for twenty years and, at the time of his arrest, resided there with his mother, grandmother, and aunt. He testified that on the night before he was arrested, he made a pallet on the floor in the laundry room and went to sleep. He explained that no one else was present at the house before he went to sleep. Collins stated that the next day, he was awoken by the officers. After he was arrested and brought to the police station, he was shown pictures of the plastic bag of drugs found underneath him and the black bag with the glass pipe that was found beside him. He testified that those items did not belong to him and that he was unsure how they got into the house. He testified that the drugs did not belong to his mother, grandmother, or aunt. He explained that the officers must have brought the drugs with them when they executed the search warrant and stated that "everybody [was] lying. All the

5

deputies [were] lying."[2]

¶10.    After Collins testified, the defense rested. Following jury instructions and closing arguments, the jury found Collins guilty of possession of methamphetamine, and the court sentenced Collins to serve a term of six years in the custody of the Mississippi Department of Corrections.[3] He was sentenced pursuant to sections 41-29-139(c), 41-29-147, and 99-19-81 as a subsequent drug offender and nonviolent habitual offender. On April 30, 2024, the defense filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The court denied the defense's motion. Aggrieved, Collins appeals.

**STANDARD OF REVIEW**

¶11.    "When testing the sufficiency of the evidence, this Court uses a de novo standard of review." *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018) (quoting *Brooks v. State*, 203 So. 3d 1134, 1137 (¶11) (Miss. 2016)). When reviewing a challenge to the sufficiency of the evidence, "[t]he relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted) (quoting *Hearn v. State*, 3 So. 3d 722, 740 (¶54) (Miss. 2008)). The evidence is viewed in the light most favorable to the State, and the State is given all favorable inferences that can be reasonably drawn from the evidence presented at trial. *Id.* (citing *Henley v. State*, 136 So. 3d 413, 416 (¶8) (Miss. 2014)). "This Court will reverse and render only when the

---

[2] Collins' exact statement when referring to the officers bringing the drugs into his home was "I know they wasn't mine, and they know they wasn't there, so they had to bring it with them."

[3] The jury instructions explained to the jury that possession can be "actual physical possession" or "constructive."

6

facts point so overwhelmingly in favor of the defendant that reasonable men could not have found, beyond a reasonable doubt, the defendant was guilty." *Jones v. State*, 991 So. 2d 629, 634 (¶11) (Miss. Ct. App. 2008). Accordingly, "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we will affirm." *Walker v. State*, 385 So. 3d 457, 463 (¶18) (Miss. Ct. App. 2023) (quoting *Melendez v. State*, 354 So. 3d 944, 952 (¶30) (Miss. Ct. App. 2023)).

## ANALYSIS

¶12.    Collins argues that the evidence was legally insufficient to support his conviction. He asserts that the State failed to prove that he knowingly and intentionally possessed the methamphetamine in the laundry room.

¶13.    Collins was charged and convicted under section 41-29-139(c), which makes it a crime to possess more than 0.1 but less than 2 grams of methamphetamine. Possession of a controlled substance may be actual or constructive. *Hudson v. State*, 30 So. 3d 1199, 1203 (¶10) (Miss. 2010) (citing *Berry v. State*, 652 So. 2d 745 (Miss. 1995)). For someone to be in actual possession of the drug, it must be "actually found on the defendant's person (i.e., in his hands, mouth, pockets, etc.)." *Id.* at 1204 (¶11). Conversely, "with constructive possession, the drug is simply found 'near' the defendant's person in a place over which the defendant exercises dominion or control." *Id.* "Proximity is usually an essential element, but by itself [proximity] is not adequate in the absence of **other incriminating circumstances**." *Id.* at 1203 (¶10) (emphasis added) (quoting *Dixon v. State*, 953 So. 2d 1108, 1112 (¶9) (Miss. 2007) (quoting *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971))). Additionally, our

7

supreme court

> has affirmed a conviction based on constructive possession when: (1) The defendant owned the premises where the drugs were found and failed to rebut the presumption that he was in control of such premises and the substances within; or (2) the defendant did not own the premises but was sufficiently tied to the drugs found there by (a) exerting control over the premises when he knew or should have known of the presence of the substance or (b) placing himself in the midst of items implicating his participation in the processing of the substance.

*Dixon*, 953 So. 2d at 1113 (¶11).

¶14.     In *Terry v. State*, 324 So. 3d 753, 755 (¶7) (Miss. 2021), the defendant argued the State failed to prove he constructively possessed the drugs. The Mississippi Supreme Court found that there was sufficient evidence to support the finding that the defendant constructively possessed drugs because there was evidence that he lived in the apartment where the drugs were found: "[he] was exerting control over the premises[,] . . . the drugs were in plain view, [and he] knew or should have known of the presence of the substance." *Id.* at 757 (¶15).

¶15.     Similarly, here, Collins argues that the State presented insufficient evidence to sustain his conviction. Collins resided in the house where the drugs were discovered, and his testimony established that he had lived there for "twenty-some-odd years." Although his mother owned the house, Collins exerted control over the room where the drugs were found. He maintained use of the laundry room by enclosing it with a sheet over the doorway and made a pallet on the floor to sleep. Besides Collins' proximity to the drugs, there were "other incriminating circumstances." The officers found the clear plastic bag containing methamphetamine directly on top of the pallet Collins had prepared the night before to sleep

8

on. The drugs were found under Collins' body when he was rolled over to be handcuffed. He testified that no one else was present in the home before he went to sleep. Moreover, Collins lived with his mother, grandmother, and aunt, and he testified that the drugs did not belong to them. The glass pipe also constituted an "other incriminating circumstance" since it is a device commonly associated with the consumption of controlled substances, including methamphetamine and crack cocaine.

¶16. Collins disputed the three officers' testimonies when he testified that they all lied on the stand, but that merely created an issue of fact to be resolved by the jury. "Matters regarding the weight and credibility of the evidence are to be resolved by the jury." *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993) (citing *Neal v. State*, 451 So. 2d 743, 758 (Miss. 1984)). Here, the officers testified how they found the drugs, and the forensic testing confirmed they were indeed illegal drugs. Collins testified the officers planted the drugs, and he denied possessing them. The jury determined the weight, worth, and credibility of the evidence, as instructed. Further, there was sufficient evidence to convict Collins of possession. We find a rational juror could have easily found, beyond a reasonable doubt, sufficient evidence to convict Collins of the crime charged.

## CONCLUSION

¶17. Considering the evidence in the light most favorable to the State, there was sufficient evidence for a rational jury to find Collins guilty of possession of the drugs. Accordingly, we affirm.

¶18. **AFFIRMED.**

9

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**