# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-KA-00413-SCT

*KIERRA WALLACE a/k/a KIERRA SHARDAE WALLACE*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 12/01/2023 |
| TRIAL JUDGE: | HON. MICHELLE DEAN EASTERLING |
| TRIAL COURT ATTORNEYS: | BENJAMIN RUSH, JR. |
| | AMANDA HOPE MEADOWS |
| | SCOTT WINSTON COLOM |
| | COLLEN LEIGH HUDSON |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/08/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., GRIFFIS AND SULLIVAN, JJ.**

**SULLIVAN, JUSTICE, FOR THE COURT:**

¶1.     In November 2023, Wallace was found guilty of one count of aggravated assault. On appeal, Wallace raises four issues:  (1) defective indictment, (2) constructive amendment of the indictment, (3) sufficiency of the evidence, and (4) denial of the motion for a new trial based on newly discovered evidence. This Court finds that Wallace's arguments are without

merit and affirms her conviction.

**FACTS**

¶2.     In December 2022, Mariah Karriem and her friends went to the Sinsations Hookah Lounge in Lowndes County, Mississippi. Also at the lounge was Kierra Wallace with a group of people, including her sister Rokila Wallace. While Karriem and Wallace knew each other, the two did not talk that night at the lounge. Karriem described the atmosphere at the lounge as "[e]verybody was in there partying and stuff. It wasn't like no conflict with other people. It was all right, like a regular club night."

¶3.     As the lounge was in the process of closing, Karriem exited the lounge and began walking toward her vehicle. Before she could make it to her car, Karriem was attacked from behind. Karriem explained that three assailants "jumped [her] together," not separately. In addition to punching and kicking her, one of the assailants hit her with a glass bottle about "two or three times." She believed that she was hit with a bottle once in the head and twice in the back. Because she was trying to protect herself by "sitting on the ground with [her] head covered in [her] lap," she did not see which of the assailants had hit her with the bottle. Once the attack was over, Karriem witnessed her attackers get into a car and drive off. It was at this time that she was able to clearly identify her attackers, who had been Wallace, Rokila Wallace, and Wallace's cousin Riquala Dora.

¶4.     After the attack, Karriem attempted to find her assailants "to get [her] lick back." When she was unable to do so, she went home and told her parents about the ambush. At her

2

parents' behest, she went to the hospital to have her injuries examined. She sustained minor injuries, *i.e.*, bruises to her head and back, which were treated with ice packs and ibuprofen. She admitted that her injuries did not require much medical attention. After receiving treatment, she went to the Columbus Police Department to file a report.

¶5.     After the attack, Karriem was made aware that the attack had been recorded. Initially, she was only able to provide the police with a short version of the recording. A few days later, she returned to the police department with a longer recording, which was thirty-four seconds long and showed one of the assailants using a glass bottle to beat Karriem. The longer version was admitted into evidence and played for the jury.

¶6.     The State also admitted into evidence a Facebook Live recording, which showed Wallace and her sister admitting to and bragging about beating Karriem. Additionally, Wallace displayed an injured hand and acknowledged that the attack had been recorded. This video was played for the jury as well.

¶7.     On November 29, 2023, the jury found Wallace guilty of aggravated assault. She was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC) with five years suspended, fifteen years to serve, followed by five years of postrelease supervision. In the sentencing order, the trial court retained jurisdiction over the case for one year.

¶8.     On December 8, 2023, Wallace filed a motion for judgment notwithstanding the

verdict or for a new trial.[1] Within the motion, Wallace asserted several arguments, including newly discovered evidence. After Wallace was sentenced, a confidential informant informed the State that he had a twelve-second video of the assault. Wallace argued that the motion for a new trial should be granted based on this newly discovered evidence because the video was from a closer angle and clearly showed Wallace's cousin hitting Karriem with a glass bottle.

¶9.     After a hearing on the motion, the trial court determined that the "newly discovered video" was not exculpatory as it was "a 12 second clip of the same 34 second video that was introduced by the State at trial . . . but take from a different angle." Simply, the video had "no bearing on the jury's verdict." The trial court determined also that "there was sufficient, credible, and competent evidence presented to satisfy a reasonable and fair-minded juror of the Defendant's culpability for aggravated assault of Karriem, whether directly or pursuant to accomplice liability beyond a reasonable doubt." As a result, the trial court denied Wallace's motion. On April 1, 2024, Wallace filed her notice of appeal.

¶10.    On November 15, 2024, the trial court modified Wallace's original sentencing order. Wallace was resentenced to serve the following:

> 20 years MDOC [c]ustody, with 15 years suspended, with two (2) years to serve in MDOC [c]ustody with credit for one (1) year credit served in the Mississippi Penitentiary system and one (1) year to be served in the Lowndes

---

[1] We note that Wallace did move for a directed verdict, which was denied. After the State finally rested, Wallace renewed her motion for a directed verdict, which was denied as well.

County Adult Detention Center. Upon release from the LCADC, [Wallace] shall serve five (5) years of MDOC Post-Release Supervision. All fines and fees associated with the original sentence remain in effect.

## DISCUSSION

### I. Wallace's Indictment

¶11. "The question of whether an indictment is defective is an issue of law and therefore deserves a relatively broad standard of review, or de novo review, by this Court." *Douglas v. State*, 378 So. 3d 361, 369 (Miss. 2024) (internal quotation marks omitted) (quoting *Tapper v. State*, 47 So. 3d 95, 100 (Miss. 2010)). We have said that "[t]he ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Warren v. State*, 187 So. 3d 616, 621-22 (Miss. 2016) (internal quotation marks omitted) (quoting *Medina v. State*, 688 So. 2d 727, 730 (Miss. 1996)).

¶12. Wallace asserts that her indictment is defective because it charged her with attempt to cause and recklessly causing, which are two conflicting intent elements for aggravated assault. She argues that her indictment

> omits the word "recklessly," but it charges both attempt and actually causing serious bodily injury and includes the language from the reckless portion of the statute regarding circumstances manifesting extreme indifference to the value of human life.

The State disagrees, arguing that "Wallace's indictment contained no such conflation." It asserts that the indictment omitted the word "recklessly" and that "neither Wallace's indictment nor her jury instructions paired recklessness with attempt." According to the State,

5

the indictment "simply showed that [it] did not pursue aggravated assault under a theory of causing serious bodily injury through recklessness." Rather, the State asserts that the indictment "alleged alternate methods of aggravated assault in the disjunctive."

¶13.    Both Wallace and the State acknowledge that this issue was raised for the first time on appeal. Because Wallace's argument concerns a substantive defect, this issue is not waived. *See **Young v. State***, 368 So. 3d 299, 303 (Miss. 2023) ("Substantive defects in the indictment, however, are not subject to waiver and may be raised for the first time on appeal." (citing ***State v. Berryhill***, 703 So. 2d 250, 254 (Miss. 1997))).

¶14.    Wallace's argument relies on a case from the Court of Appeals, ***Daniels v. State***, 385 So. 3d 848 (Miss. Ct. App. 2024). The indictment in ***Daniels*** asserted that the defendant "did willfully, feloniously and unlawfully attempt to cause serious bodily injury to Oriento Thompson recklessly under circumstances manifesting extreme indifference to the value of human life by shooting at him with a deadly weapon in violation of Mississippi Code 97-3-7(2)(a)(i) (1972)[.]" ***Daniels***, 385 So. 3d at 854. The ***Daniels*** court determined that "the charging language for aggravated assault erroneously conflated the elements of an 'attempt to cause serious bodily injury' with the elements of actual 'causing' serious bodily injury by acting 'recklessly under circumstances manifesting extreme indifference to the value of human life.'" ***Id.***

¶15.    The instant case is distinguishable from ***Daniels***. Wallace's indictment stated that she "did purposely, knowingly, and feloniously cause or attempt to cause serious bodily injury

6

to Mariah Karriem, under circumstances manifesting extreme indifference to the value of human life . . . in violation of [Mississippi Code Section] 97-3-7[(Rev. 2020)][.]" While the indictment includes the phrase "under circumstances manifesting extreme indifference to the value of human life," it plainly states that the intent element was intentional, not reckless. Wallace's indictment does not "mix[] the concept of attempt which . . . embraces the element of intent, with the concept of actually causing injury through recklessness, which requires no specific intent." *Morris v. State*, 748 So. 2d 143, 146 (Miss. 1999) (quoting *Harris v. State*, 642 So. 2d 1325, 1327-28 (Miss. 1994)). Rather, the indictment clearly shows that the State had to prove Wallace had specific intent to commit the crime. *See Harris*, 642 So. 2d at 1327. The jury instructions, which correctly listed the elements of aggravated assault, supports such a finding. *See Morris*, 748 So. 2d at 145-47; *Harris*, 642 So. 2d at 1328; *Daniels*, 385 So. 3d at 856. Like the indictment, the jury instructions do not use the word *recklessly*. Also, jury instruction S-1 clarified that the State was proceeding under two theories of aggravated assault: (1) attempting to cause serious bodily injury and (2) causing serious bodily injury.

¶16. Because the intent element was not conflated, Wallace's defense was not prejudiced. As a result, the indictment was not defective.

¶17. Wallace also challenges her indictment by arguing that it was constructively amended. Specifically, Wallace argues that jury instruction S-1 constructively amended the indictment because the instruction "changed the elements of the crime as it was charged in the

indictment and allowed the jury to convict without finding that the attempt was done under circumstances manifesting extreme indifference to the value of human life." But Wallace failed to object to this instruction at trial. This Court has stated that

> [A] defendant's "failure to object to the jury instruction as constructively amending the indictment waives this issue on appeal." *Neal v. State*, 15 So. 3d 388, 397 (Miss. 2009) (citing *Rubenstein v. State*, 941 So. 2d 735, 774 (Miss. 2006)). "If no contemporaneous objection is made, the error, if any is waived" and this Court's review is limited to plain error. *Robinson v. State*, 247 So. 3d 1212, 1226 (Miss. 2018) (internal quotation marks omitted) (quoting *Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987)). We have also explained that "[n]ot all variances between the indictment and instructions constitute a constructive amendment, nor do they rise to plain error." *Bell v. State*, 725 So. 2d 836, 855 (Miss. 1998).

*Brent v. State*, 296 So. 3d 42, 50 (Miss. 2020).[2]

¶18. While this Court can still review this matter for plain error, we decline to do so under the invited-error doctrine. In addition to failing to object to jury instruction S-1, Wallace's

---

[2]Regarding plain-error review, we have explained that:

"For the plain-error doctrine to apply, there must have been 'an error that resulted in a manifest miscarriage of justice or "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" *Hall v. State*, 201 So. 3d 424, 428 (Miss. 2016) (alterations in original) (quoting *Brown v. State*, 995 So. 2d 698, 703 (Miss. 2008)). "To determine if plain error has occurred, this Court must determine 'if the trial court has deviated from a legal rule, whether that error is plain, clear[,] or obvious, and whether that error has prejudiced the outcome of the trial.'" *Conner v. State*, 138 So. 3d 143, 151 (Miss. 2014) (alteration in original) (internal quotation marks omitted) (quoting *Grayer v. State*, 120 So. 3d 964, 969 (Miss. 2013)).

*Myers v. State*, 396 So. 3d 1132, 1135 (Miss. 2024).

8

counsel advocated for the instruction over another instruction proposed by the State that omitted the very language about which Wallace now complains. We have held that "[i]t is axiomatic that 'a defendant cannot complain on appeal of alleged errors invited or induced by himself.'" *Thomas v. State*, 249 So. 3d 331, 347 (Miss. 2018) (quoting *Galloway v. State*, 122 So. 3d 614, 645 (Miss. 2013); *O'Connor v. State*, 120 So. 3d 390, 397 (Miss. 2013); *Singleton v. State*, 518 So. 2d 653, 655 (Miss. 1988)). We find that Wallace is estopped from challenging this instruction under the invited-error doctrine.

## II.     Sufficiency of the Evidence

¶19.    This Court has held that:

> When testing the sufficiency of the evidence, this Court uses a *de novo* standard of review. *Brooks v. State*, 203 So. 3d 1134, 1137 (¶ 11) (Miss. 2016). "The relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Hearn v. State*, 3 So. 3d 722, 740 (¶ 54) (Miss. 2008) (citation omitted). The evidence is viewed in the light most favorable to the State. *Henley v. State*, 136 So. 3d 413, 415 (¶8) (Miss. 2014).

*Sanford v. State*, 247 So. 3d 1242, 1244 (Miss. 2018).

¶20.    Wallace argues that "[t]here is no proof in this case that Wallace or her co-defendants intended to cause serious bodily injury to Karriem." Rather, she claims that the evidence shows that Wallace's intent was to commit simple assault. The State argues that the "verdict is supported by ample, credible evidence that Wallace either directly, or as an active participant with her accomplices, caused or attempted to cause serious bodily injury to the victim." Wallace's entire argument is based on the fact that she was not the one who hit the

9

victim with a glass bottle and the fact that the victim did not suffer any major injuries from the assault.

¶21.    First, "[u]nder Mississippi law, '[o]ne who aids and abets another in the commission of a crime is guilty as a principal.'" *Williams v. State*, 334 So. 3d 68, 73 (Miss. 2022) (second alteration in original) (quoting *Buchanan v. State*, 316 So. 3d 619, 631 (Miss. 2021)); *see also* Miss. Code Ann. § 97-1-3 (Rev. 2020). "Any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an 'aider and abettor[.]'" *Pace v. State*, 242 So. 3d 107, 119 (Miss. 2018) (internal quotation marks omitted) (quoting *Hoops v. State*, 681 So. 2d 521, 533 (Miss. 1996), *abrogated on other grounds by Willis v. State*, 300 So. 3d 999 (Miss. 2020)). The jury was given an accomplice jury instruction. The State presented a thirty-four-second-long video that showed Wallace participating in the three-on-one assault in which she helped kick, hit, and beat Karriem. The jury also heard testimony from the victim in which she described how three assailants attacked her unprovoked and in unison.

¶22.    Regarding the lack of serious bodily injuries suffered by the victim, the State charged Wallace with attempt to cause serious bodily injury. We have said that "the statute only requires an attempt to cause serious bodily injury. It does not require the victim to have actually sustained serious bodily injury." *Burden v. State*, 347 So. 3d 174, 177 (Miss. 2022) (citing *Wilson v. State*, 936 So. 2d 357, 365 (Miss. 2006)). Therefore, the fact that the attack failed to cause actual serious bodily injury to Karriem supports the jury's finding of

10

attempted aggravated assault.

¶23. Wallace asserts also that the her "actions amounted, at most, to simple assault." This Court has said that "a violent and aggravated assault committed with one's fists may constitute a crime" under Mississippi's aggravated-assault statute. *Jackson v. State*, 594 So. 2d 20, 23 (Miss. 1992); *see also* *Burden*, 347 So. 3d at 177. Here, Wallace and two accomplices continuously kicked and hit Karriem in unison as she sat on the ground defenseless. Additionally, whether a person attempted to cause bodily injury, *i.e.*, simple assault, or serious bodily injury, *i.e.*, aggravated assault, involves a question of fact to be determined by the jury. *See* *Burden*, 347 So. 3d at 177 (citing *Jackson*, 594 So. 2d at 24); *see also* *Bright v. State*, 986 So. 2d 1042, 1048 (Miss. Ct. App. 2008) ("Whether 'bodily injury' or 'serious bodily injury' resulted is a question for the jury." (quoting *Odom v. State*, 767 So. 2d 242, 246 (Miss. Ct. App. 2000))). The jury was instructed that it was to consider whether Wallace was guilty of simple assault if it determined that Wallace was not guilty of aggravated assault. Being duly informed and considering the evidence presented, the jury found that the facts demonstrated Wallace intended to cause serious bodily injury to Karriem.

¶24. When viewing the evidence in the light most favorable to the State, this Court finds that the evidence was sufficient to show that any rational trier of fact could have found that, beyond a reasonable doubt, Wallace attempted to inflict serious bodily injury on Karriem.

III. **Motion for New Trial Based on Newly Discovered Evidence**

¶25. This Court "review[s] a trial court's denial of a motion for new trial based on newly

11

discovered evidence for an abuse of discretion." *Ashford v. State*, 233 So. 3d 765, 776 (Miss. 2017) (citing *Moore v. State*, 508 So. 2d 666, 668-69 (Miss. 1987)). We have held that

> Newly discovered evidence warrants a new trial if the evidence will probably produce a different result or verdict; further, proponent must show that evidence has been discovered since trial, that it could not have been discovered before trial by the exercise of due diligence, that it is material to the issue, and that it is not merely cumulative, or impeaching.

*Williams v. State*, 669 So. 2d 44, 55 (Miss. 1996) (citing *Ormond v. State*, 599 So. 2d 951, 962 (Miss. 1992)). "The grant or denial of a new trial based on newly discovered evidence is within the discretion of the trial court, and this Court will not overrule the trial court unless it abused its discretion." *Davis v. State*, 43 So. 3d 1116, 1126-27 (Miss. 2010) (internal quotation marks omitted) (quoting *Ormond*, 599 So. 2d at 962).

¶26. Wallace argues that the twelve-second clip received after the trial "warrants a new trial, where the jury can have a fuller picture of what happened and who was responsible for escalating the fight." The State argues that the trial court did not err by denying the motion because the video had "no bearing on the jury's verdict since it was cumulative of Exhibit S-1 and was not exculpatory."

¶27. This Court finds that the trial court did not abuse its discretion by denying the motion. While the twelve-second video was not discovered until after the trial, it is merely cumulative of the thirty-four-second video that was played for the jury. The trial court did not abuse its discretion by denying Wallace's motion for a new trial.

## CONCLUSION

12

¶28. Wallace's indictment did not charge her with two conflicting intent elements. Rather, it charged her with attempt to cause serious bodily injury and having actually caused serious injury, both of which require proof of specific intent, *i.e.*, intentionally committing the crime. No recklessness was alleged. Because there is no doubt that Wallace acted intentionally, her indictment was not defective. Wallace is estopped from challenging jury instruction S-1 due to her failure to object and the invited-error doctrine.

¶29. The State presented ample evidence that would allow a rational juror to conclude that Wallace intended to cause serious bodily injury to Karriem. Because the twelve-second video was cumulative of the properly admitted video, the trial court did not abuse its discretion by denying Wallace's motion for a new trial.

¶30. We affirm Wallace's conviction.

¶31. **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., ISHEE, GRIFFIS AND BRANNING, JJ., CONCUR.**